IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02658-WYD-CBS

CHARLES E. BRACK,
        Plaintiff,
v.

JOE ORTIZ,
individually and in his official capacity;
AL STANLEY,
individually and in his official capacity;
DEB ALLEN,
individually and in her official capacity;
THOMAS WATERS,
individually and in his official capacity;
MATTHEW HEAP,
individually and in his official capacity;
LELAND SIMPKINS,
individually and in his official capacity;
CINDY JAMISON,
individually and in her official capacity;
CHARLES OLIN,
individually and in his official capacity; and
JEFF JENKS,
individually and in his official capacity,
        Defendants.

_____

**ORDER**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Craig B. Shaffer**

        The matter before the court is Defendants'[1] Motion to Dismiss [#47], filed July 3,

2006 and the concomitant Memorandum Brief in Support of Defendants' Motion to

_____

        [1] Defendants Jamison and Jenks did not join the Motion to Dismiss.  However,
Defendants Jamison and Jenks  were  served,  respectively,  on May 10, 2006, and May 22, 2006.
*See* Summonses [#28] & [#32].

Dismiss [#48], filed July 3, 2006.  Plaintiff filed his Response [#63], on September 25, 2006.  Defendants filed their Reply [#68], on October 18, 2006.  Plaintiff filed "Plaintiff's Supplemental Brief..." [#71], on November 11, 2006.

Pursuant to the Order of Reference [#26] filed May 16, 2006, this civil action was referred to the Magistrate Judge to, *inter alia*, "[h]ear and determine pretrial matters . . . and submit proposed findings of fact and recommendations for rulings on dispositive motions . . . ."  By a Memorandum [#49], dated July 5, 2006, Defendants' Motion to Dismiss was referred to this court for a recommendation.

The court has reviewed the Motion to Dismiss, the Response, the Reply, the Supplemental Brief, the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons discussed below, it is recommended that Defendants' Motion to Dismiss be granted.

**I.      Background.**

This is a **42 U.S.C. § 1983** prison inmate civil rights case. Plaintiff Charles Brack ("Plaintiff") is a convicted felon previously incarcerated in the Colorado Department of Corrections ("CDOC"), who is currently a parolee.  Joe Ortiz is the Executive Director of the CDOC; Al Stanley is the Chairman of the Colorado State Parole Board; Deb Allen is a member of the Parole Board; Thomas Waters is a hearing officer with the Parole Board; Matthew Heap is a Parole Supervisor; Leland Simpkins is a Parole Officer; Charles Olin is the Administrator for the CDOC Sex Offender Treatment Program ("SOTP"); Defendant Jamison is a therapist with Progressive Therapy Systems; and Defendant Jenks is a polygrapher with Amich & Jenks.

2

Pursuant to **42 U.S.C. § 1983,** Plaintiff claims his due process rights have been violated because he was classified as a sex offender upon parole, yet was never convicted of a sex offense.  Further, Plaintiff claims that his equal protection rights have been violated because Defendants have classified him as a sex offender, supervised his parole, and revoked his parole in a different manner than those similarly situated. *(Amd. Compl., p. 6a).*  Plaintiff requests damages and injunctive relief because CDOC classified him as a sex offender and revoked his parole[2] as a result of his refusal/failure to comply with the conditions of parole relating to his sex offender designation.

Defendants argue that Plaintiff's claims must be dismissed because: (1) his claims for damages are barred by the Eleventh Amendment to the extent Plaintiff is suing the Defendants in their official capacities; (2) certain Defendants are entitled to absolute immunity; (3) Plaintiff's claims are barred by the Rooker-Feldman doctrine; (4) his claims are barred by collateral estoppel; (5) Plaintiff cannot show that certain Defendants personally participated or were otherwise involved in his classification as a sex offender; (6) Plaintiff's request for damages is barred by the *Heck* doctrine, *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); (7) his claims are barred by the Prison Litigation Reform Act ("PLRA"); and (8) the Defendants are entitled to qualified immunity to the extent Plaintiff is suing them in their individual capacities.

## II.    Standard of Review.

Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) and

---

[2] According to Plaintiff's Supplemental Brief, Plaintiff is, again,  currently on parole: "The Plaintiff is no longer an 'inmate,'  but rather, a parolee living in the community." *(Supp. Br., p. 2).*

Rule 12(b)(1).  Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  **FED. R. CIV. P. 12(b)(6).**  When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Rule 12(b)(1) states that a court may dismiss a complaint for "lack of jurisdiction over the subject matter."  **FED. R. CIV. P. 12(b)(1).**  Generally, Rule 12(b)(1 ) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995) (citations omitted); *Burke v. Fitzgerald,* 2006 WL 2165272, *1 -2 (D. Colo. 2006).

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to

4

evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Id.*

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case. *Id.*

Further, the court must construe Plaintiff's Amended Complaint and other papers liberally because he appears *pro se. See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court may not be the *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. The court may not assume that the Plaintiff can prove facts that have not been alleged, or that Defendants have violated laws in ways that the Plaintiff has not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

III.   **Analysis.**

A.   **Jurisdiction:**

1.   **Rooker-Feldman *doctrine.***

Pursuant to Rule 12(b)(1), Defendants claim that this court lacks jurisdiction over Plaintiff's claims because of the *Rooker-Feldma*n doctrine, which forbids appeals from state-court judgments to federal district court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). A district court lacks jurisdiction to consider claims that are "actually decided" by a state court or "inextricably intertwined" with prior state-court

5

litigation.  *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)

[citations omitted]. Here, Plaintiff asserts due process and equal protection claims

regarding his sex offender classification and the revocation of his parole due to his

failure to comply with the parole conditions required by the sex offender classification.

Defendants argue that this court does not have jurisdiction over Plaintiff's due

process/equal protection claims because if it did, this court would be acting as an

appellate court, reviewing the state court's actions under **C.R.C.P. 106.**

        In his Amended Complaint, Plaintiff raises due process/equal protection claims

with respect to his classification as a sex offender.  First, Plaintiff claims that

Defendants classified "an unadjudicated parolee in the community as a sex offender"

without proper procedural protections.  *(Pl. Supp. Br., p. 9).*  Plaintiff filed a **C.R.C.P.**

**106(a)(4)** action[3] in state court relating to his sex offender classification.  After

reviewing the record of the sex offender hearing, the state court[4] affirmed the CDOC's

decision relating to Plaintiff's sex offender classification and concluded that Plaintiff

"was provided with procedural due process...[a]ny procedural defects that may have

occurred are insufficient to warrant reversal." *(Reply, Attach. B., p. 2).*[5]

---

        [3]An inmate's classification as a sex offender is a quasi-judicial action that is subject to judicial review under **C.R.C.P. 106(a)(4)**. *Fisher v. Colo. Dep't. of Corr.*, 56 P.3d 1210, 1212 (Colo. App. 2002).

        [4] A court may take may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp*. 605 F.2d 1169, 1172 (10th Cir. 1979). This Motion need not be converted to a motion for summary judgment.

        [5]  **C.R.C.P. 106(a)(4)** allows an individual to seek review of a judicial or quasi-judicial decision of a state governmental body, official, or any lower judicial body.

To begin, "the Supreme Court has provided. . . little guidance in determining which claims are 'inextricably intertwined' with a prior state court judgment and which are not." *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195,198 (2d Cir. 1996). At a minimum, however, the claims raised in federal court must have been presented in the state court proceeding for the doctrine to apply. *See id.* at 198-99. "[W]here the claims were never presented in the state court proceedings and [where] the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and . . . [are] not barred by *Rooker-Feldman*." *Id.* at 199 (citing *Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1144-45 (2d Cir.1986), *rev'd on other grounds,* 481 U.S. 1 (1987)).

To discern whether claims are "inextricably intertwined" with state court proceedings, the Tenth Circuit Court of Appeals asks whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. "Three related concepts--injury, causation, and redressability--inform this analysis." *Merrill Lynch Bus. Fin. Serv. Inc. v. Nudell,* 363 F.3d 1072, 1076 (10th Cir. 2004). In other words, courts must determine whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress. *Id.* (internal citations omitted). The "inextricably intertwined" test is not satisfied when a federal plaintiff brings claims that the state court did not review on the merits. *See id.* (internal citations omitted).

The *Rooker-Feldman* doctrine limits the power of lower federal courts to review decisions of state courts. Parties aggrieved by decisions of state courts may obtain

federal review only by writ of certiorari to the United States Supreme Court, not by

collateral litigation in federal district court. *See Rooker v. Fidelity Trust Co.,* 263 U.S.

413 (1923); *D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983). At first blush, the

doctrine might seem to apply in this case, since the state Parole Board and ultimately

the state district court for the Eleventh District held that the Parole Board's

classification of the Plaintiff as a sex offender upon parole did not violate Plaintiff's due

process rights. In effect, this lawsuit asks a lower federal court to reverse the result of a

state court decision.

However, in light of recent Supreme Court decisions limiting the scope of the

*Rooker-Feldman* doctrine, it is not applicable.  In a footnote in *Verizon Maryland, Inc.*

*v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 644 n. 3, (2002), the Court held that

*Rooker-Feldman* does not apply to judicial review of state agency decisions. *Id.*  ("[the

*Rooker-Feldman*] doctrine has no application to judicial review of executive action,

including determinations made by a state administrative agency.").  Therefore, *Rooker-*

*Feldman* does not insulate the decision of the Parole Board from review by a federal

court. *Jicarilla Apache Nation v. Rio Arriba County* 440 F.3d 1202, 1207 -1208 (10th

Cir. 2006) (holding that *Rooker-Feldman* did not insulate decision of state Protest

Board); *State v. Mason,* 724 P.2d 1289, 1291 (Colo.1986) (characterizing the Parole

Board as a Colorado administrative agency); **C.R.S., § 17-2-201** (establishing the

Parole Board as a state agency); **C.R.S., § 24-1-128.5** (establishing the Department of

Corrections as a state agency).  Moreover, the Court held in *Exxon Mobil Corp. v.*

*Saudi Basic Industries Corp.,* 544 U.S. 280 (2005), that the *Rooker-Feldman* doctrine

restricts federal jurisdiction only when the state court has rendered its decision "before the federal district court proceedings commenced."  At the time this suit was filed in federal district court, the Parole Board had issued its decision classifying Plaintiff as a sex offender, but no state court had rendered a decision in the case.  The **C.R.C.P. 106** order issued by the state district court was issued on June 16, 2006, after the April 11, 2006, filing of Plaintiff's  Amended Complaint.  The *Rooker-Feldman* doctrine, therefore, does not prevent this Court from exercising jurisdiction over Plaintiff's claims, including Plaintiff's due process claim.  ***See Jicarilla Apache Nation,***  440 F.3d at 1207 -1208 (holding that *Rooker - Feldman* did not bar jurisdiction because even though the state Protest Board had rendered a decision, a state court had not at the time of the complaint).

With respect to Plaintiff's equal protection claim, specifically, pursuant to **Rule 106(a)(4)(I)**, review of Plaintiff's claims by the state court was limited to "a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion based on the evidence in the record before the defendant body or officer." ***Moore v. Middlebrook,*** 96 Fed. Appx. 634, 639, 2004 WL 928262, *4 (10th Cir. 2004) ("C.R.C.P. 106(a)(4) places no substantive restrictions on the governing body's broad discretion.").  There is no evidence in the record that Plaintiff raised his equal protection claims regarding his parole conditions during his **C.R.C.P. 106(a)(4)** state court hearing.  Therefore, the *Rooker-Feldman* doctrine should not apply here.  ***See Doe v. Pataki,*** 3 F. Supp. 2d 456, 478 (S.D.N.Y. 1998) (finding that *Rooker-Feldman* did not apply because none of the plaintiffs raised constitutional claims at their state

court hearings).  Unlike the plaintiff in *Moccio*, who at least could have raised his federal constitutional claims in his state court proceeding, *see Moccio*, 95 F.3d at 199, there is no evidence that Plaintiff, ever had such an opportunity to raise his equal protection claims in the state courts, especially given the limited nature of **Rule 106(a)** proceedings.  Therefore, Plaintiff's claims should not be barred by the *Rooker-Feldman* doctrine.  I recommend that Defendants' Motion to Dismiss be denied on these grounds.

> **2.**   **Heck *Doctrine:  Section 1983 claim for damages.***

Alternatively, pursuant to Rule 12(b)(1), Defendants claim that Plaintiff cannot seek damages under § 1983, and this court lacks subject matter jurisdiction over Plaintiff's claims, because the claims are based on a prior conviction.  A person cannot bring a § 1983 action for damages based on an allegedly invalid conviction or sentence unless the conviction or sentence has previously been invalidated.   **Heck v. Humphrey**, 512 U.S. 477, 487 (1994) (footnotes omitted).[6]

The Supreme Court evaluated the applicability of *Heck* to § 1983 claims implicating prison disciplinary convictions in **Edwards v. Balislok,** 520 U.S. 641

---

[6] The **Heck** doctrine implicates this court's subject matter jurisdiction.  *See, e.g., Fritz v. Colorado,* 223 F. Supp. 2d 1197, 1199-1203 (D. Colo. 2002); *Murphy v. Martin,* 343 F. Supp. 2d 603, 609 & n.1 (E.D. Mich. 2004); *Hawkins v. City of Greenville,* 101 F. Supp. 2d 1356, 1361 n.2 (M.D. Ala. 2000).  As such, this court reviews the applicability of **Heck** to the instant case pursuant to **FED. R. CIV. P. 12(b)(1).**  *Fritz,* 223 F. Supp. 2d at 1199-1203.  A party challenging a federal court's jurisdiction need not accept the factual allegations of the complaint as true.  Instead, a "party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based."  *Stuart v. Colo. Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir. 2001); *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kominat,* 244 F. Supp. 2d 1130, 1136 (D. Colo. 2002).

(1997).  In *Edwards,* a prisoner claimed he was denied an opportunity to present a defense in a prison disciplinary hearing, and that the hearing officer who heard the disciplinary case was biased, resulting in his conviction of a disciplinary violation and a corresponding loss of good time credits.  *Id.* at 646-47.  The prisoner brought a § 1983 claim alleging a due process violation and seeking monetary damages, a declaratory judgment that the procedures violated due process, and injunctive relief.  *Id.* at 644.  The Court found the nature of the prisoner's challenge implicated the invalidity of the disciplinary conviction and the deprivation of the prisoner's good time credits.  *Id.* at 646.  As a result, as in *Heck,* the Court held the prisoner stated no cognizable § 1983 claim unless and until the underlying disciplinary conviction was resolved in the prisoner's favor.  *Id.* at 646-47.

However, in *Muhammad v. Close,* 540 U.S. 749 (2004), the Supreme Court rejected the notion that *Heck* applies categorically to all suits challenging disciplinary proceedings.  Instead *Heck* bars a collateral attack on a prison disciplinary conviction only if the claim would result in a loss of good time credit or a collateral attack on the prisoner's underlying conviction. *Id.* The nature of Plaintiff's claims produces neither result.  Rather, Plaintiff's claim is that he, upon parole, had been unconstitutionally classified as a sex offender in the community by the Colorado State Parole Board without due process and in violation of his equal protection rights. Plaintiff's underlying sentence and conviction stems from a violation of  **C.R.S., § 18-12-108(2)(c)(II),** which makes it unlawful for a previous offender to possess a weapon.  He was sentenced on April 14, 2005, to the CDOC for a period of one year with two years mandatory parole.

Although Plaintiff has never been convicted of a sex crime, upon parole in December, 2005, he was required to sign the "Sex Offender Supervision Directive/Lawful order," which required Plaintiff, *inter alia*, "to participate in offense specific mental health treatment [SOTP]." It is this classification and the underlying implications on his parole which Plaintiff challenges. He does not challenge his underlying weapons possession conviction or sentence. Rather, Plaintiff claims Defendants unconstitutionally classified him as a sex offender upon parole. Pursuant to **Muhammad,** 540 U.S. at 751-752, the **Heck** doctrine is not implicated by Plaintiff's claims, and this court has jurisdiction over them. Therefore, I recommend that Defendants' Motion to Dismiss be denied on these grounds.

**B.   Official Capacity Claims:  Eleventh Amendment Immunity from Damages.**

Alternatively, Defendants claim that the Eleventh Amendment bars Plaintiff's claims against them in their official capacities, and, therefore, they are immune from liability. Lawsuits against public officials in their official capacities are equivalent to suits against the public entity and are barred. **Will v. Mich. Dep't of State Police**, 491 U.S. 58, 71 (1989) ("Neither the state nor its officials acting in their official capacities are 'persons' under § 1983."). Only a suit brought against an official in his individual capacity is brought against a "person." **Hafer v. Melo,** 502 U.S. 21 (1991). To the extent Plaintiff is suing Defendants in their official capacities, he is attempting to impose liability on their employer, the CDOC or the Colorado Parole Board. **See Meade v. Grubbs**, 841F2d 1512, 1529 (10th Cir. 1988). In the absence of a waiver, the

12

Eleventh Amendment forbids a suit for damages against a state entity in federal court. **Ambus v. Granit Bd. of Educ.**, 995 F2d 992, 994 (10th Cir. 1993) (citing **Edelman v. Jordan**, 415 U.S. 651, 663 (1974).   Neither the CDOC nor the Parole Board has not waived immunity for damages suits; therefore, Plaintiff's claims for damages against these Defendants in their official capacities should be barred. **Duncan v. Gunter**, 15 F. 3d 989, 991 (10th Cir.1994).[7]

### C.   Absolute Immunity.

Next, Defendants claim that Defendants Stanley, Allen, Waters, Heap, and Simpkins are absolutely immune from liability.  Members of the Colorado Parole Board have absolute immunity from damages for actions taken within the scope of their employment.  **Knoll v. Webster**, 838 F.2d 450 (10th Cir. 1988); **Malek v. Haun**, 26 F.3d 1013 (10th Cir. 1994); **Russ v. Uppah**, 972 F.2d 300 (10th Cir.1992).  Defendants Stanley, Allen, and Waters are members of the Colorado Parole Board and are absolutely immune from suits for monetary damages under § 1983.  **See Ernst v. Gunter,**  1993 WL 436833, *1 (10th Cir. 1993) (finding that parole board members are

---

[7] However, Plaintiff still seeks declaratory and injunctive relief.  **See, Ex parte Young,** 209 U.S. 123, 159 (1908) (recognizing a narrow exception to Eleventh Amendment immunity and holding that a state officer may be enjoined from "taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant; " however, the exception is applicable only under the following circumstances:  first, there must be an ongoing violation of federal law; second, it applies only to prospective relief and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past; and, finally, it has no application in suits against the states and their agencies, which are barred regardless of the relief sought); **Buchwald v. University of New Mexico School of Medicine,** 159 F.3d 487, 496, fn. 8 (10th Cir. 1998) (recognizing a narrow exception to Eleventh Amendment immunity with respect to declaratory relief:  "Were plaintiff to receive declaratory relief that is "ancillary" to the injunction she seeks, that declaration would be subject to the same *Ex parte Young* analysis as the injunction.").

absolutely immune from damages liability for actions taking in performance of the

board's official duties regarding the granting or denying of parole.).

Defendants Heap and Simpkins also claim entitlement to absolute immunity,

claiming that as parole officers, their testimony and participation in a parole revocation

hearing is shielded by absolute immunity.  However, "[g]iven the sparing recognition of

absolute immunity by both the Supreme Court and this court, one claiming such

immunity must demonstrate clear entitlement." *Robinson v. Volkswagenwerk AG*, 940

F.2d 1369, 1370 (10th Cir.1991), *cert. denied,* 502 U.S. 1091 (1992).

Defendants Heap and Simpkins argue that in making decisions about whether to

initiate a parole revocation proceeding, they are entitled to absolute immunity.

However,  the Supreme Court observed that "the officer is not by this recommendation

[to initiate a revocation proceeding] converted into a prosecutor committed to convict,"

nor is the officer similarly absolutely immune.  *Gagnon v. Scarpelli*, 411 U.S. 778,

785,(1973). Similarly in *Snell v. Tunnell* 920 F.2d 673, 686-696 (10th Cir. 1990), the

Tenth Circuit addressed the proper limits of the doctrine of absolute immunity.  In

declining to extend the protection of such immunity to social workers and agency

attorneys who had played instrumental roles in removing children from the plaintiffs'

home, the *Snell* court focused on the distance between the challenged functions and

those benchmark functions to which absolute immunity has been extended.  In its

discussion, the court used parole officers as an example of this analysis:

> In contrast to the preparation of pretrial bond or pre-sentence reports . .
> .*other decisions involving the revocation of probation or parole by a
> probation or parole officer warrant only qualified, not absolute, immunity*

14

> because such decisions are farther removed from the judicial process and
> are not initiated by courts. *Id.* at 692 n. 18 (emphasis added).

Although *Snell* did not involve a parole officer, consideration of the case law in this and

other circuits reveals that the functions at issue in this case are too far attenuated from

the judicial process to be accorded absolute immunity. *See Mee v. Ortega,* 967 F.2d

423, 427 (10th Cir. 1992).  Accordingly, I recommend that the court find that Defendants

Heap and Simpkins are not entitled to absolute immunity for their participation in his

parole revocation proceedings, for requiring Plaintiff to sign three parole directives, and

for approving/initiating parole revocation proceedings.

### D.  Individual Capacity Claims:  Qualified immunity.

Defendants Ortiz, Heap, Simpkins, and Olin insist that they are entitled to

qualified immunity, barring claims brought against them in their individual capacities.

Because Defendants have asserted qualified immunity as an affirmative defense,

Plaintiff "bears a heavy two-part burden." *Romero v. Bd. of County Comm'r,* 60 F.3d

702, 704 (10th Cir.1995) (quoting *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th

Cir.1995)).  Plaintiff must show (1) "that the [D]efendant[s'] actions violated a

constitutional or statutory right" and (2) that the right "allegedly violated [was] clearly

established at the time of the conduct at issue." *Id.*  In other words, Plaintiff must

articulate with specificity the clearly established constitutional right violated and the

Defendants' conduct which violated that right. *Id.*

Plaintiff has failed to demonstrate how Defendants' actions violated a clearly

established constitutional or statutory law.  First, Plaintiff claims that, although he has

never been convicted of a sex offense, Defendants violated his due process rights by classifying Plaintiff as a sex offender upon parole. *(Amd. Compl., p. 6a.).* Following a defendant's motion to dismiss on qualified immunity grounds, a plaintiff must come forward with any additional allegations showing that the defendant violated clearly established law. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). The court must then determine whether the complaint includes "all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir.1989).

To support his due process claim, Plaintiff cites to *Gwinn v. Awmiller,* 354 F.3d 1211, 1218-19 (10th Cir. 2004), in which the Tenth Circuit Court held that the Plaintiff had supported his due process claim with sufficient factual allegations– that the government lied about him being a sex offender– which implicated a liberty interest. However, the Court ultimately concluded that the *Gwinn* defendants did not violate the plaintiff's due process rights by classifying an *incarcerated* prisoner, who had not been convicted of a sexual offense, as a sex offender. *Id.* (pointing to the hearing panel's reliance on a detailed written account from a victim of alleged sexual assault, and the fact that the plaintiff-prisoner presented no more than a general written denial of allegations).

Plaintiff, however, claims that Defendants violated his due process rights by classifying him *in the community* as a sex offender. *(Resp., p. 1).* With respect to that issue, the *Gwinn* court held that there was a lack of evidence precluding summary

16

judgment on the issue of whether classifying a person on probation as a sex offender violated due process. *Id.*  Specifically, the parties failed to present evidence on the specific procedural protections afforded to the probationer prior to registering[8] as a sex offender upon parole. *Id.*  Rather than supporting Plaintiff's contention that a clearly established constitutional right has been violated, *Gwinn* supports the notion that due process claims are factually specific. *Id.* at 1224.  Merely classifying a prisoner on parole as a sex offender, in and of itself, does not violated due process concerns. *Brown v. Frey*, 889 F.2d 159, 165 (8th Cir. 1989) (emphasis added) ("[I]f there is a legitimate question as to whether the more particularized constitutional right exists under the facts of the case, it cannot be said that the prison official's action violated clearly established law.").  Plaintiff's only allegation appears to be that he was labeled as a sex offender upon parole, despite the fact that he had never been convicted of a sex crime, based on "false, misleading, and unsubstantiated reports." *(Amd., Compl., p. 3).*

In response, Defendants claim that they based their decision on prior arrests for sexual assaults and a polygraph examination.  Further, Defendants point to **C.R.S., § 17-2-201 (5)(f)(I),** which specifically provides that the Parole Board may establish "any other condition the board may determine to be necessary."  Thus, the Parole Board was free to consider Plaintiff's prior arrest as a "peeping tom" and his subsequent arrest for attempted sexual assault when setting the conditions of his parole without violating due process principles. *See  United States v. Payne,* 181 F.3d 781, 785-86

---

[8]  Unlike the facts in *Gwinn,* Plaintiff was not required to *register* as a sex offender.

17

(6th Cir. 1999) (finding that parole conditions may infringe on otherwise constitutionally protected liberties provided that the restrictions are reasonably related to the purposes of parole).

Thus, requiring Plaintiff to participate in a sex offender treatment program as a condition of his parole was within the authority of the Parole Board and did not clearly violate an established constitutional right.  Plaintiff's response has fallen well-short of establishing his burden of demonstrating otherwise.  Plaintiff has failed to come forward with specific factual allegations supporting his claim that his due process rights have been violated or case law supporting a claim that the right was clearly established at the time of Defendants' alleged violation.[9]

Second, Plaintiff claims that "by classifying, supervising, and revoking the parole of the Plaintiff [Defendants have] treated him in a manner different from all others similarly situated." **(Amd. Compl., p. 6a.).**  However, the Parole Board rightfully required Plaintiff's participation in a sex offender treatment without violating his equal protection rights. Plaintiff argues that CDOC officials violated his Fourteenth Amendment equal protection rights because he was treated differently than other

---

[9] The state district court ultimately upheld– after the filing of Plaintiff's Amended Complaint-- the designation and classification based upon its review of the record of the classification hearing concluding, "Plaintiff was provided with procedural due process."  **(Reply, p. 7).**  Further, the conditions of Plaintiff's parole imposed as a result of the sex offender designation were also deemed proper.  *See Snell,* 920 F.2d 673, 692 n. 18 (10th Cir.1990) (noting that probation officer's "decisions involving the revocation of probation or parole" may warrant qualified immunity); *Griffin v. Leonard,* 821 F.2d 1124, 1125-26 (5th Cir.1987) (concluding that a probation officer who sought parole violation arrest warrant based on police report entitled to qualified immunity).

defendants.  Plaintiff does not specifically identify the class of people treated differently than him and falls well short of demonstrating how Defendants' actions violate a clearly established right.

Assuming without deciding that Plaintiff is claiming that he has been treated differently than those convicted of a crime who were not required to register as a sex offender upon parole, "absent an allegation of a suspect classification, review of prison officials' differing treatment of various inmates is quite deferential: in order to withstand an equal protection challenge, those classifications must be reasonably related to a legitimate penological purpose." *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir.1994).  Here, the Parole Board determined that Plaintiff, unlike other inmates up for parole, had been previously arrested for being a peeping tom and for sexual assault and had made admissions to a polygraph examiner, admitting that he coerced a girl into sexual contact and forced another into sexual intercourse by use of threat.  *(Reply, p. 7).*  Thus, the requirement that he participate in a sex offender treatment program and be classified as a sex offender upon parole had a rational relationship to rehabilitative objectives and withstands Plaintiff's equal protection challenge. *See id.* ("Not only might the [Department of Corrections] classify inmates differently because of slight differences in their histories, but they also might classify inmates differently because some still seem to present more risk of future misconduct than others."); *Martinez v. Flowers*, 164 F.3d 1257, 1261 (10th Cir.1998) (upholding classification of violent offenders); *see generally Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir.1995) (applying the rational basis standard to the treatment of a prisoner and stating that

"[w]hen the plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis").  Accordingly, qualified immunity should bar Plaintiff's claims brought against Defendants Ortiz, Heap, Simpkins, and Olin  in their individual capacities.

### E.   Personal participation

#### 1.   *Defendants Ortiz and Stanley.*

Alternatively, Defendants claim that Plaintiff failed to allege that Defendants Ortiz and Stanley personally participated in the alleged violations.  Plaintiff's claims are brought under **42 U.S.C. § 1983**, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. **42 U.S.C. § 1983.**

An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional violation.  *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983); *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("A defendant cannot be liable under § 1983 unless personally involved in the deprivation.") Respondeat superior is not within the purview of section 1983 liability.  *Id.*  In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *see also Rizzo v.*

*Goode*, 423 U.S. 362, 371 (1976).  Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official.  *Id.*

Here, Plaintiff fails to allege that Defendants Ortiz and Stanley personally took part in the alleged violation.  Instead, Plaintiff claims that Defendants Ortiz and Stanley are responsible for assuring that statutory and regulatory requirements are enforced, followed, and applied lawfully and fairly to all DOC inmates and parolees.  Officials who are not personally involved in the alleged violation are not subject to a civil rights claim under a *respondeat superior* theory merely because they hold positions of authority.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).  A supervisor's liability can only be based on his failure to stop a subordinate's constitutional violation upon actual knowledge.  *Woodward v. City of Worland*, 977 F.2d 1392, 1999-1400 (10th Cir. 1992).  Mere negligent supervision does not state a claim.  *Id.*  In order to state a claim against a supervisor, the complaint must allege the supervisor "actually knew of and acquiesced in the behavior."  *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995).  As Defendants note in their briefs, no such link has been shown here.  Defendants Ortiz and Stanley cannot be held liable for an alleged constitutional violation for which they were not directly responsible, and I recommend that their Motion to Dismiss should be granted on this basis.

> **2.      *Defendants Jamison and Jenks.***

Defendants Jamison and Jenks did not join the Motion to Dismiss.  However, it is the court's opinion that Plaintiff has failed to allege personal participation on behalf of either Defendant with respect to his due process or equal protection claims.

Therefore, I order Plaintiff to show cause in writing why these Defendants should not be dismissed on these grounds.

**F.      Collateral estoppel.**

Alternatively, Defendants argue that Plaintiff's claims are precluded by collateral estoppel principles.  "The doctrine of collateral estoppel, or 'issue preclusion,' mandates that the final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit.  Collateral estoppel bars re-litigation of an issue if: (1) the issue is identical to that actually and necessarily adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted was a party or in privity with a party in the proceeding; (3) there was final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding." *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 82 (Colo. 1996) (citation omitted). *See also Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396, 399 (1974); *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995); *Orjias v. Stevenson*, 31 F.3d 995, 1010 (10th Cir. 1994), cert. denied, 513 U.S. 1000 (1994); *United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992), cert. denied, 506 U.S. 1035 (1992). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1272 (10th Cir. 1995), cert. denied, 516 U.S. 1045 (1996).

Here, the only review of Plaintiff's sex offender classification occurred during a

**C.R.C.P. 106(a)(4)** hearing.  **C.R.C.P. 106(a)(4)** review is limited to consideration of whether the lower tribunal has exceeded its jurisdiction or abused its discretion. ***See Two G's, Inc. v. Kalbin***, 666 P.2d 129 (Colo.1983); ***Norby v. City of Boulder***, 195 Colo. 231, 577 P.2d 277 (1978).  Review of the issues presented in this case were unavailable because the lower tribunal had no discretion or jurisdiction to consider Plaintiff's claims.  ***Wilson v. Town of Avon***, 749 P.2d 990, 992 (Colo. App.,1987).  To the extent the state court considered due process issues, there is no indication that Plaintiff had a "full and fair opportunity to litigate the issue." Therefore, Plaintiff's claims should not be barred by collateral estoppel.

### G.   PLRA.

Finally, Defendants claim that Plaintiff's Amended Complaint should be dismissed because Plaintiff did not comply with PLRA.

#### 1.   *Plaintiff failed to exhaust administrative remedies.*

Defendants claim that the PLRA governs Plaintiff's claims. **42 U.S.C. § 1997e(a)**. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a); *Booth v. Churner***, 532 U.S. 731, 735 (2002). The exhaustion provisions of **42 U.S.C. § 1997e(a)** are not jurisdictional.  An inmate must plead exhaustion in his complaint. ***Steele v. Fed. Bureau of Prisons***, 355 F.3d 1204, 1210-11 (10th Cir. 2003).  He "must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their

23

disposition with specificity." *Id.* at 1211.  An inmate cannot satisfy the PLRA's

exhaustion requirement with a blanket statement that he has exhausted his remedies.

Further, when multiple claims are present in a single lawsuit, the PLRA requires that *all*

*available remedies be exhausted as to all claims*, or the complaint must be dismissed.

***Ross v. County of Bernalillo***, 365 F.3d 1181, 1188-89 (adopting the "total exhaustion"

rule).  "In the absence of particularized averments concerning exhaustion showing the

nature of the administrative proceeding and its outcome, the action must be dismissed

under § 1997e." ***Steele,*** 355 F.3d at 1210.

Section 1997e(a) provides that "[n]o action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, *by a*

*prisoner confined in any jail, prison, or other correctional facility* until such administrative

remedies as are available are exhausted." (emphasis added).  The PLRA defines

"prisoner" as "any person incarcerated or detained in any facility who is accused of,

convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or

the terms and conditions of parole, probation, pretrial release, or diversionary

program." **42 U.S.C. § 1997e(h)**.  The Tenth Circuit has held that the statutory

language is "plain and unambiguous: 'no prisoner confined in a jail, prison, or other

correctional facility may bring a suit concerning prison life until he first exhausts his

administrative remedies.'"  ***Norton v. The City Of Marietta, OK*** 432 F.3d 1145, 1150

(10th Cir. 2005) (quoting  **42 U.S.C. § 1997e(a))**.  "Therefore plaintiff, who was not a

prisoner confined in a jail, prison, or other correctional facility when he brought suit, did

not have to exhaust his administrative remedies first." ***Id.***

24

Plaintiff claims that PLRA does not apply to him because he was not an inmate, but rather a parolee, at the time he filed his Complaint. *(Res., p. 7-8).* However, at the time Plaintiff executed his initial Complaint–December 13, 2005--, he was still in custody, and was paroled ten days after executing his Complaint.  At the time Plaintiff filed his Amended Complaint– April 11, 2006– he was residing in a private community corrections facility, and his parole, which was granted on December 23, 2005, had been revoked.[10]  Applying the plain language of § 1997e(a), at the time of the filing of both his original Complaint and his Amended Complaint, Plaintiff was residing in a "correctional facility."  Thus, his claims are subject to the PLRA.  *See, e.g., Hage v. ICCS Halfway House,* 2006 WL 2583093, *1 (D. Colo. 2006) (requiring inmate in a halfway house to plead exhaustion of administrative remedies); *Cox v. Mayer,* 332 F.3d 422, 425 (6th Cir. 2003) (determining that PLRA applies to a prisoner who filed suit during his confinement without exhausting his administrative remedies and thereafter was released from prison). *Cf. Calia v. Werholtz,* 408 F. Supp. 2d 1148, 1150 (D. Kan. 2005) (holding that parolee was not a "prisoner" within the meaning of PLRA when he filed complaint after being released).

With respect to exhaustion, Plaintiff checked "yes" when asked if he exhausted available administrative remedies.  Yet, he then claimed that some of his claims were

---

[10]  At the time his Amended Complaint was filed, Plaintiff's parole was revoked.  In his Amended Complaint, Plaintiff lists his address as follows: "Charles E. Brack, DOC #42625, 8031 Adams Community Corrections Program, 8031 Highway I-76, Henderson, CO 80640." (*Amd. Compl., p.2).*  Plaintiff executed  his original Complaint on December 13, 2005, ten days before being released on parole on December 23, 2005. *(Compl., p. 8).*  His initial Complaint was accepted for filing on December 29, 2005.

25

not grievable and that two of his claims were "appealable," which he appealed. *(Amd. Compl., p. 7).* Plaintiff failed to attach copies of grievances with respect to any claim and provides no description of any administrative proceedings with respect to those claims or their outcome. Plaintiff has failed to demonstrate that he followed CDOC's administrative grievance protocols prior to filing this lawsuit. *Ross v. County of Bernanillo*, 365 F.3d 1181, 1184 (10th Cir. 2004) (holding that "in the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997(e)"). Accordingly, Plaintiff has failed to demonstrate exhaustion in accordance with PLRA. Therefore, I recommend that Defendants' Motion to Dismiss should be granted on exhaustion grounds.

### 2.      Plaintiff fails to allege that he sustained a physical injury.

Defendant claims that the PLRA requires Plaintiff to make a showing of physical injury in order to recover damages. **42 U.S.C. § 1997e (e)**. The PLRA provides as follows: "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Under this provision of the PLRA, an inmate cannot sue for mental anguish or emotional distress alone without evidence of a physical injury. *Perkins v. Kan. Dep't. of Corr.*, 165 F.3d 803, 807-08 (10th Cir. 1999); *Young v. Knight*, 113 F.3d 1248 (10th Cir. 1997) ("We further agree with the district court that petitioner has wholly failed to make any showing of physical injury. Thus, his claim of mental anguish does not state a claim for relief pursuant to the requirement of

**42 U.S.C. § 1997(e)** as amended by the PLRA.").

Plaintiff fails to allege any physical injury.  Accordingly, his claim for

compensatory damages fails as a matter of law pursuant to the PLRA.  Therefore, I

recommend that court deny Plaintiff's requests for compensatory damages on this

basis.  Should the court disagree with the recommendation to otherwise dismiss this

case, Plaintiff's request for nominal damages, if any, may persist, despite Plaintiff's

failure to allege any physical injury.[11]

Accordingly,

**IT IS ORDERED** that on or before **December 13, 2006,** Plaintiff shall show

cause in writing why Plaintiff's claims against Defendants Jamison and Jenks should

not be dismissed for failure to claim Defendants Jamison and Jenks personally

---

[11] The plain language of § 1997e(e) applies only to actions "for mental or emotional injury."   While a claim for compensatory damages would clearly be barred in the absence of any showing of physical injury, it is not clear that a claim for either punitive or nominal damages would also be barred. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 808, fn. 6. (10ᵗʰ Cir. 1999) (finding that § 1997e(e) would not bar claims for injunctive relief if plaintiff failed to allege a physical injury).  Nominal damages, for instance, are available for the violation of certain "absolute" constitutional rights, such as due process, without any showing of actual injury. *Carey v. Piphus*, 435 U.S. 247, 266; *Seales v. Van Bebber,* 251 F3d. 869, 879 (10ᵗʰ Cir. 2001) (finding that § 1997e(e) does not bar recovery of nominal damages for violations of prisoners' rights).  Thus, Plaintiff could argue that a claim for nominal damages arising from a due process violation such as that alleged here is not actually an action "for mental or emotional injury" that would be subject to the limitations of § 1997e(e). *See Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C.Cir.1998) (noting possibility that § 1997e(e) would not apply to claim for nominal damages); *Wright v. Miller*, 973 F. Supp. 390, 396 (S.D.N.Y.1997) (noting that § 1997e(e) would bar plaintiffs from recovering any damages other than nominal ones for alleged due process violations that caused only mental injury).

participated in the alleged violations against Plaintiff.  Plaintiff is warned that failure to show cause in writing by December 13, 2006 why this action should not be dismissed against Defendants Jamison and Jenks may result in dismissal of Defendants Jamison and Jenks without further notice.

Further, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss [#47], filed July 3, 2006, **BE GRANTED as follows:**

1.      That Eleventh Amendment immunity bars suit against Defendants Ortiz, Stanley, Allen, Waters, Heap, Simpkins, and Olin in their official capacities;

2.      That absolute immunity bars suit against Defendants Stanley, Allen, and Waters in their individual capacities;

3.      That qualified immunity bars suit against Defendants Ortiz, Heap, Simpkins, and Olin in their individual capacities;

4.      That Plaintiff's § 1983 claims against Defendants Ortiz and Stanley be dismissed for Plaintiff's failure to allege personal participation on their behalf;

5.      That Plaintiff's claims be dismissed as against Defendants Ortiz, Stanley, Allen, Waters, Heap, Simpkins, and Olin for failure to exhaust pursuant to PLRA; and

6.      That this civil action **BE DISMISSED** against Defendants Ortiz, Stanley, Allen, Waters, Heap, Simpkins, and Olin.

**IV.     Advisement to the Parties.**

Within ten days after service of a copy of the Recommendation, any party may

serve and file written objections to the magistrate judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  **28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)**;  *In re Griego*, 64 F.3d 580,

583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions

of the proposed findings or recommendations to which a specific objection is made.  **28**

**U.S.C. § 636(b)(1)**.  A general objection that does not put the district court on notice of

the basis for the objection will not preserve the objection for *de novo* review.  *See In re*

*Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As*

*2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The

district judge may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.  **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must

be both timely and specific to preserve an issue for de novo review by the district court

or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate

judge's proposed findings and recommendations and will result in a waiver of the right

to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-

80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de*

*novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); ***One Parcel of Real Property***, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); ***Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.***, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); ***Ayala v. United States***, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

      **DATED** at Denver, Colorado, this 22nd day of November, 2006.

                    BY THE COURT:


                           s/ Craig B. Shaffer
                          United States Magistrate Judge